CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 17 2019

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beale
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ROBERT ANDREW BODEN,            )
                                )
    Plaintiff,                  )   Civil Action No. 7:18cv00256
                                )
v.                              )
                                )   By: Michael F. Urbanski
UNITED STATES OF AMERICA,       )   Chief United States District Judge
                                )
    Defendant.                  )

## MEMORANDUM OPINION

This matter comes before the court on plaintiff Robert Boden's motions in limine to exclude an expert witness, ECF No. 32, and evidence of emails to a treating physician, ECF No. 43. The government has responded, ECF Nos. 38 and 46, and a hearing was held on the motions on October 3, 2019. For the reasons stated below, the court will **DENY** Boden's motions.

I.

On June 7, 2018, Boden filed his complaint against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674, Compl., ECF No. 1. Boden alleges that John H. Bonk, D.P.M., a podiatrist practicing medicine at the Salem Veteran Affairs Medical Center ("VAMC"), acted negligently with regard to his treatment of Boden's injured ankle, eventually resulting in an amputation of the right leg below the knee. Boden has filed two motions in limine to exclude (i) testimony by the government's expert witness as to the excessiveness of Boden's proposed life-care plan and (ii) evidence relating to emails Boden sent to Dr. Greenwood regarding the cause of one of Boden's ankle surgeries.

Boden initially injured his ankle in 1990 after jumping off a tank in Canada while serving in the United States Army. He received minimal treatment for the injury and continued to suffer from ankle pain with it "giving out" into the early 2000s. Id. at 3. Boden sought treatment for his ankle pain at the Salem VAMC beginning in 2005. Over the course of nine years, Boden's primary care provider and orthopedists treated his ankle several times a year. The doctors at the Salem VAMC prescribed Boden bracing, physical therapy, and steroid injections, but none of these successfully alleviated his ankle pain. Boden was then diagnosed with lateral ankle instability and referred by the Salem VAMC orthopedic department to the podiatry department for potential surgery.

Boden saw a Salem VAMC podiatrist on April 23 and April 24, 2014, to evaluate his ankle. The doctor performed a physical exam, reviewed radiographs and MRIs, injected Boden with a nerve block, and referred Boden to a neurologist. On May 21, 2014, a Salem VAMC neurologist determined that Boden had normal nerve functions in his foot and ankle.

Boden returned to the Salem VAMC podiatry department and saw Dr. Bonk on June 10, 2014. Boden and Dr. Bonk discussed surgical options, and Boden agreed to a lateral ankle stabilization surgery to address his ankle deformity. Dr. Bonk performed the surgery on July 14, 2014. Boden continued to experience pain and the ankle deformity returned. Dr. Bonk determined the surgery failed and recommended a second surgery. Boden elected to proceed with an ankle and subtalar joint fusion surgery using a rod and screws. Dr. Bonk performed the second surgery on December 8, 2014. Nearly four weeks after the surgery, Boden saw Dr. Bonk for a follow-up appointment and "register[ed] no complaints at th[at] time." Def.'s Reply Br., ECF No. 37, 3. On February 3, 2015, days after returning from a trip to Florida, Boden

complained to Dr. Bonk of a "pop" in his ankle, and x-rays revealed that a screw was backing out. Id. Boden's post-operative orders were to be non-weightbearing on his ankle. Id.

On February 25, 2015, Boden saw a non-VA podiatrist, paid for by the Salem VAMC. Dr. Greenwood determined that Boden's anklebones were not fusing together – a "non-union." Id. On March 12, 2015, Dr. Greenwood operated to reinsert a screw that was backing out. Dr. Greenwood's post-operative instructions were similar to Dr. Bonk's, ordering Boden to "be strictly non-weightbearing." Def.'s Reply Br., ECF No. 46, 2. On March 21, 2015, Boden drove his vehicle on an eight-hour trip, which resulted in an automobile accident. At a March 25, 2015 follow-up appointment, Boden told Dr. Greenwood about the car accident and how his right foot hit the center console of the vehicle. At the meeting, Boden "denie[d] any significant injury or worsening of pain to his right foot." Id. at 3.

Dr. Greenwood performed a second ankle surgery on August 6, 2015. On August 17, 2015, Boden saw Dr. Greenwood again and she noted that Boden "also request[ed] a letter stating that the current surgery was not in direct relationship to the car accident he was in on March 21, 2015." Pl.'s Mot., ECF No. 43, 2. Dr. Greenwood provided Boden with a letter stating that "[t]he non-union to his right ankle and problems occurred prior to this accident [and] this accident was not directly related to the surgery that was performed on August 6." Id.

On December 21, 2015, Boden wrote another email to Dr. Greenwood, asking her to "please write up a letter stating that the screw in my ankle came loose and eventually had to be removed as a result of the accident." Id. On December 22, 2015, Dr. Greenwood responded to Boden, stating "I cannot directly correlate the screw backing out of your right

3

calcaneus as a result of the motor vehicle accident you were in." Def.'s Reply Br., ECF No. 46, 4. Dr. Greenwood performed three total surgeries on Boden's ankle, all of which ultimately were unsuccessful, leading to a non-union. Boden then opted for a below-the-knee amputation at the Gainesville, Florida VAMC. Compl., ECF No. 1, 10.

In preparation for trial, Boden retained Craig Lichtblau, M.D. as an expert witness to create a life-care plan detailing Boden's projected future medical needs, Pl.'s Mot., ECF No. 32-1. Dr. Lichtblau's report lists numerous projected medical services, detailing the period, frequency, and cost of each service. Originally, Dr. Lichtblau's report provided minimal explanation for his projections. However, during his deposition, he further elaborated on the reasoning for each item in his report. The United States retained Susan Wirt, a registered nurse and a certified life-care planner,[1] to complete a report to rebut Dr. Lichtblau's report. She prepared a life-care plan critique wherein she identifies areas of disagreement with Dr. Lichtblau's report. She did not prepare her own life-care plan. Wirt's first report, Pl.'s Mot., ECF No. 32-3, provided an extensive critique to almost every item on Dr. Lichtblau's report. Following her review of Dr. Lichtblau's deposition where he "provided further clarification on his opinions," Def.'s Reply Br., ECF No. 38-1, Wirt submitted an amended critique.

Wirt's amended opinion provides the following critiques to Dr. Lichtblau's report:

- Mobility Equipment: Wirt agrees that Boden will require a scooter or other mobility device. However, Wirt disagrees that Boden requires a scooter lift for his car. Wirt identifies that there are numerous lightweight scooters than can be broken down into several smaller components.
- Bathing: Wirt acknowledges that Boden will need a bench or chair for his shower. However, Wirt points out that Boden already has a shower chair that will need to be replaced periodically.

---

[1] Wirt is a certified life-care planner by the International Commission on Healthcare and American Association of Nurse Life Care Planners.

4

- Home Modifications: Wirt acknowledges that Boden will require a grab rail in his shower. However, Wirt points out that Boden already has a grab rail in his shower, and one should not be included in his life-care plan.
- Support Care: Wirt disagrees with Dr. Lichtblau that Boden will require aide and attendant care at the level detailed in his report. Wirt asserts that there is no medical evidence that Boden cannot independently complete his activities of daily living.

ECF No. 38-1. Boden seeks to exclude both Wirt's expert testimony and the evidence relating to his emails with Dr. Greenwood about the cause of one of his ankle surgeries.

## II.

A. Wirt's Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony.[2] Rule 702's prescriptions are guided by the Supreme Court's decisions in Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). In Daubert, the Court explained that the "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Under Rule 702, "expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" to the trier of fact. Id. at 591.[3] In Kumho Tire, the Supreme Court made clear that these principles apply to all proposed expert witnesses, including those with specialized

---

[2] Rule 702 states:
    A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
        (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
        (b) the testimony is based on sufficient facts or data;
        (c) the testimony is the product of reliable principles and methods; and
        (d) the expert has reliably applied the principles and methods to the facts of the case.

[3] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

5

knowledge such as Wirt. 526 U.S. at 141. "The question of whether a witness is qualified to testify is context-driven and can only be determined by the nature of the opinion he offers." RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc., 609 F. App'x 731, 738 (4th Cir. 2015). "[C]ourts should be conscious of two guiding, and sometimes competing principles: Rule 702 was intended to liberalize the introduction of relevant expert evidence and expert witnesses have the potential to be both powerful and quite misleading." Hickerson v. Yamaha Motor Corporation, 882 F.3d 476, 481 (4th Cir. 2018). "[A] trial judge has a great deal of discretion in deciding whether to admit or exclude expert testimony." United States v. Dorsey, 45 F.3d 809, 814 (4th Cir. 1995).

Boden seeks to exclude Wirt's testimony because he argues, as a registered nurse, she cannot opine on the medical necessity of his support care without the review of a physician. Boden further argues that the testimony should be excluded under Fed. R. Evid. 403. The government argues that Wirt's opinion is admissible because she is a registered nurse under Virginia law, her report does not speak to medical necessity, and her experience lays a foundation for a reliable report, with or without a physician's review. The court finds, for the reasons that follow, that Wirt's testimony is reliable and does not require a physician's review to be admissible. Any question as to the weight of Wirt's life-care plan critique is properly reserved for cross-examination.

First, the court finds that any concern of prejudice from the admission of Wirt's testimony under Fed. R. Evid. 403 is mitigated because this is a bench trial. See Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994) ("Rule 403 assumes a trial judge is able to discern and weigh the improper inferences, and then balance those improprieties against probative

6

value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision"). The Fourth Circuit has held that "in the context of a bench trial, evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial." Id.

Further, courts in this circuit have found that life-care plans can be admissible without a physician review, so long as they are reliable. See e.g., Burress v. Winters, No. 08-cv-2622, 2010 WL 2090090, at *1 (D. Md. May 21, 2010) (allowing a life-care plan without a physician review and finding that "numerous courts have permitted non-physicians to opine about future medical needs, even when their opinions are not supported by the recommendations of a physician"); Payne v. Wyeth, No. 08-cv-119, 2008 WL 5586824, at *3-4 (E.D. Va. Nov. 17, 2008) (permitting life-care plan where the expert's opinion was based upon sufficient facts and data, and is a product of reliable principles and methods which the expert had previously used, despite not having a physician review the report).

The First Circuit, the only circuit to write on this issue, affirmed a district court's decision to admit a life-care planner's testimony regarding future medical needs that did not include a physician review. Rivera v. Turbo Med. Ctr., 415 F.3d 162, 170-71 (1st Cir. 2005). "The district court considered [the expert's] professional credentials and ascertained that he had been admitted as an expert on rehabilitation and life-care planning in numerous state and federal courts . . . ." Id. at 171. The court also took into consideration the records reviewed and other steps taken by the expert in preparing the life-care plan. Id. Taken together, the court concluded the expert's methodology was sufficiently reliable and the testimony to be admissible, "[a]lthough [the] report might have benefitted from a physician's review . . . ." Id.

7

Other courts also have found a life-care planner's testimony to be admissible based on the methodology the life-care planner used. Courts typically look to what evidence the life-care planner relied on when developing the life-care plan, including reviewing a patient's medical records, reviewing depositions of the patient or the patient's treating physician, meeting with the patient or treating physician, or physically examining the patient. See e.g., Deramus v. Saia Motor Freight Line, LLC, No. 08-cv-23, 2009 WL 1664084, at *2 (M.D. Ala. June 15, 2009) (admitting a registered nurse's life-care plan without a physician's review where she reviewed medical records, depositions taken of the plaintiff's physicians, and met with the plaintiff); Botelho v. Nordic Fisheries, Inc., No. 15-cv-11916, 2018 WL 2291315, at *6 (D. Mass. May 18, 2018) (admitting the testimony of a non-certified life-care planner where he followed a similar methodology, including reviewing medical records, looking at medical history, evaluating the patient, and talking to treating physicians); Rivera, 415 F.3d at 171 (holding that a district court did not abuse its discretion in admitting testimony from a life-care expert that was "based on a review of records from the agency providing her with skilled nursing care, a letter from her physician, and an interview of [plaintiff's] family and caregiver"); Paine ex rel. Eilman v. Johnson, No. 06-cv-3173, 2010 WL 749861, at *2-3 (N.D. Ill. Feb. 25, 2010) (admitting life-care plan where expert relied on meetings with plaintiff, consulted other experts in the case, and reviewed extensive medical history and background information); Santa Otero v. United States, 428 F.Supp.2d 34, 50 (D.P.R. 2006) (admitting life-care plan where expert relied in large part on medical records).

Boden argues that the court should follow In re Ethicon, Inc., No. 12-cv-4301, 2014 WL 186872, *11-12 (S.D. W.Va. Jan. 15, 2014), where the Southern District of West Virginia

8

excluded a life-care plan because a physician had not reviewed the plan. In Ethicon, the court excluded the life-care plan "[b]ecause much of [the] life-care plan describes particular medical procedures and services, [and] there must be a medical foundation for her recommendation. In other words, a doctor or medical expert must opine to a reasonable degree of medical certainty that the items listed in the life-care plan are necessary." Id. The court finds the case at bar is distinguishable because in Ethicon the life-care plan included specific medical recommendations, such as psychological therapy sessions, the use of certain drugs, and specific surgical procedures. Here, the court finds that Wirt's testimony does not opine on particular medical procedures requiring a physician's approval, but rather her opinions are based on her recommendations as a registered nurse about Boden's support care. While the amount of in-home care that Boden requires is important to his life-care plan, Wirt can testify as to her opinion on the amount of care he needs based on her experience as a registered nurse and life-care planner.

Wirt reviewed over ten years of records and documents in drafting her life-care plan, including:

- The complaint;
- Medical records from Parham Doctor's Hospital (Julie Greenwood, DPM-08/06/2015 operative report, anesthesia records);
- Veterans Administration Medical Center (VAMC)-Gainesville, FL;
- Cross City Nursing and Rehabilitation Center;
- VAMC-Salem, VA;
- VAMC-Richmond, VA;
- The Podiatry Center;
- Central Piedmont Health Services, Inc.;
- Halifax Regional Hospital Emergency Department;
- 01/28/2015, 06/22/2016 Virginia Department of Veterans Services Rating Decision;

9

- Mid-Florida Prosthetics and Orthotics;
- Allergy, Asthma, & Immunology Consultants, Inc.;
- Richard Denner, DPD, FACFAS report of 01/30/2019;
- Bernard Pettingill, Jr., Ph.D. report of 02/21/2018;
- Deposition of Robert Boden 02/11/2019;
- Deposition of Carol Boden 02/12/2019;
- Deposition of Craig Lichtblau, MD, PA 06/03/2019; and
- Report of Craig Lichtblau, MD, PA 11/16/2017.

ECF No. 38-1, at 4. She further based here opinion on over two decades of clinical experience as a registered nurse, a certified case manager, and a life-care planner, as well as her review of the pertinent scientific and medical literature reasonably relied upon by members of the life-care planning profession. Id. While a physician's review might have benefited Wirt's report, the court concludes that Wirt's methodology was sufficiently reliable as to be admissible. As such, any objections to Wirt's opinions must go to the weight of the evidence rather than its admissibility. See Smithers v. C & G Custom Module Hauling, 172 F.Supp.2d 765, 773 (E.D. Va. 2000) (noting that while the argument to exclude the life-care plan may have merit, "on balance [it] go[es] to the weight, not the admissibility of the proposed evidence"); see also Person v. Ford Motor Co., No. 09-cv-133, 2011 WL 10501606, at *12 (N.D. Miss. Oct. 13, 2011) (concluding that objections to life-care plan "involve matters which can be adequately addressed during cross-examination at trial."); Deramus, No. 08-cv-23, 2009 WL 1664084, at *2 (M.D. Ala. June 15, 2009) ("The Court concludes that any objection [] must go to the weight the jury should give to her testimony rather than its admissibility.")

Moreover, the court concludes that Boden's argument that Wirt's testimony is inadmissible because it comments on Dr. Lichtblau's credibility is unpersuasive. Wirt's testimony is intended to rebut Dr. Lichtblau's report, not attack his credibility. See e.g.,

Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc., No. 5:18-cv-00039, 2019 WL 1770162, at *6 (W.D. Va. Apr. 22, 2019) (admitting an expert's rebuttal report that primarily addresses defendant's expert's report); Snider-Jefferson v. Amigo Mobility Int'l, Inc., No. 2:15-cv-406, 2016 WL 4424954, at *4 (E.D. Va. Aug. 17, 2016) ("A rebuttal or reply expert report is proper if the intent of the report is solely to contradict or rebut evidence on the same subject matter identified by the opposing party's expert report.") As discussed above, Wirt's report directly addresses her disagreement with Dr. Lichtblau's report and is admissible as rebuttal evidence. Further, no weight is given to the fact that the United States' expert provided a life-care critique rather than a life-care plan, because the critique is intended to rebut Boden's life-care plan. See Person, 2011 WL 10501606, at *13 ("[Defendant] acted within its rights in retaining its own expert to critique the expert testimony of [plaintiff's expert], and there is nothing in the law which requires [defendant's] expert to prepare a life-care plan"). The court concludes that Wirt's report is also admissible as rebuttal evidence. Accordingly, the court finds that Wirt's life-care plan is admissible and will deny Boden's motion to exclude Wirt's expert testimony.

B. Boden's Emails

Boden next seeks to exclude his emails to Dr. Greenwood regarding the cause of his ankle surgery as irrelevant and prejudicial. In his motion, Boden argues that the evidence should be excluded because its sole purpose is to attack Boden's character with a specific act of conduct that is irrelevant to the issue of negligence, causation, or damages, and that any such evidence would be prejudicial and fail the balancing requirement of Fed. R. Evid. 403. The United States argues the evidence is relevant and admissible because (i) it goes to the issue of the cause of Boden's amputation, (ii) it supports the United States' affirmative defense of

Boden's failure to mitigate damages, and (iii) it is evidence of Boden's tendency for untruthfulness.

The United States argues its theory of the case, in part, relies on several other factors causing Boden's non-union beyond Dr. Bonk's alleged negligence, including Boden's noncompliance with post-operative instructions and Boden's poor overall health. Def. Reply Br., ECF No. 46, 6. For example, Dr. Steinberg, the United States' podiatry expert, noted that Boden's March 2015 car accident demonstrated Boden's noncompliance with post-operative instructions, including the crucial requirement of being non-weightbearing. Id. Dr. Steinberg's testimony directly rebuts the testimony offered by Boden's expert, Dr. Derner, that Dr. Bonk's negligence led to the amputation. The United States argues this provides an alternative theory of the cause of the amputation. Dr. Steinberg's testimony relies on the evidence in the record of the March 2015 car accident and is supported by Boden's statements regarding the car accident to Dr. Greenwood.

Further, the United States pled an affirmative defense that Boden failed to mitigate damages. Answer, ECF No. 5, 5. Under Virginia law, a plaintiff has a duty "to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage." Monahan v. Obici Med. Mgmt. Servs., Inc., 271 Va. 621, 636, 628 S.E.2d 330, 339 (2006). Boden's failure to comply with Dr. Greenwood's non-weightbearing orders, the United States argues, could have contributed to his non-union and subsequent amputation. According to Dr. Steinberg, "it is critical that the patient remain completely non-weightbearing on the ankle for 6-12 weeks." Def.'s Reply Br., ECF No 46, 7. The United States further argues the substance of Boden's conversations and emails with Dr. Greenwood "have a tendency to make

his failure to exercise reasonable care after Dr. Bonk's care 'more probable than it would be without the evidence.'" Id. (quoting Fed. R. Evid. 401(a)).

Finally, as with Wirt's expert testimony, the court finds that any concern of prejudice from the admission of the emails under Fed. R. Evid. 403 is mitigated because this is a bench trial. See Schultz, 24 F.3d at 632.

The court concludes that evidence related to Boden's emails to Dr. Greenwood is relevant to the defendant's affirmative defense and Boden's cause of the amputation. Accordingly, the court will deny Boden's motion to exclude the email to Dr. Greenwood.[4]

### III.

For the reasons stated herein, Boden's motions to exclude Wirt's expert testimony and to exclude the emails to Dr. Greenwood are **DENIED**.

An appropriate Order will be entered.

Entered: 12/17/2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

---

[4] The court notes that the United States also argues that the emails would be admissible under Fed. R. Evid. 608(b) as evidence of a specific instance of conduct on cross-examination. Because the court finds the evidence to be relevant and admissible on other grounds, it need not determine its admissibility under Fed. R. Evid. 608(b) at this time.